**RECORD NO. 13-2353**

In The
# United States Court Of Appeals
## For The Fourth Circuit

## JANINE PERRY WEBER,

*Plaintiff – Appellee,*

**v.**

## MELISSA SUE DANCY OLIVER,

*Defendant – Appellant,*

and

**LINCOLN NATIONAL LIFE INSURANCE COMPANY, d/b/a Lincoln Financial Group,**
*Defendant.*

**ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
AT NORFOLK**

––––––––––––––––

**BRIEF OF APPELLANT**

––––––––––––––––

| | |
|---|---|
| **Jonathan L. Stone** | **Steven G. Owen** |
| **NORRIS & ST. CLAIR P.C.** | **COURTHOUSE LAW GROUP** |
| **2840 South Lynnhaven Rd.** | **2521 North Landing Rd., Suite 200** |
| **Virginia Beach, VA 23452** | **Virginia Beach, VA 23456** |
| **(757) 498-7700** | **(757) 427-3348** |
| | |
| *Counsel for Appellant* | *Co-Counsel for Appellant* |

*Gibson*Moore Appellate Services, LLC
421 East Franklin Street ♦ Suite 230 ♦ Richmond, VA 23219
804-249-7770 ♦ www.gibsonmoore.net

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT
DISCLOSURE OF CORPORATE AFFILIATIONS AND OTHER INTERESTS

Disclosures must be filed on behalf of <u>all</u> parties to a civil, agency, bankruptcy or mandamus case, except that a disclosure statement is **not** required from the United States, from an indigent party, or from a state or local government in a pro se case.  In mandamus cases arising from a civil or bankruptcy action, all parties to the action in the district court are considered parties to the mandamus case.

Corporate defendants in a criminal or post-conviction case and corporate amici curiae are required to file disclosure statements.

If counsel is not a registered ECF filer and does not intend to file documents other than the required disclosure statement, counsel may file the disclosure statement in paper rather than electronic form.  Counsel has a continuing duty to update this information.

No. _____        Caption: _____

Pursuant to FRAP 26.1 and Local Rule 26.1,

_____
(name of party/amicus)

_____

 who is _____, makes the following disclosure:
(appellant/appellee/petitioner/respondent/amicus/intervenor)


1.      Is party/amicus a publicly held corporation or other publicly held entity?      YES      NO


2.      Does party/amicus have any parent corporations?                          YES      NO
        If yes, identify all parent corporations, including grandparent and great-grandparent corporations:



3.      Is 10% or more of the stock of a party/amicus owned by a publicly held corporation or other publicly held entity?                                      YES      NO
        If yes, identify all such owners:

4.   Is there any other publicly held corporation or other publicly held entity that has a direct financial interest in the outcome of the litigation (Local Rule 26.1(b))?       YES      NO
If yes, identify entity and nature of interest:

5.   Is party a trade association? (amici curiae do not complete this question)      YES      NO
If yes, identify any publicly held member whose stock or equity value could be affected substantially by the outcome of the proceeding or whose claims the trade association is pursuing in a representative capacity, or state that there is no such member:

6.   Does this case arise out of a bankruptcy proceeding?                             YES      NO
If yes, identify any trustee and the members of any creditors' committee:

Signature: _____          Date: _____

Counsel for: _____

## CERTIFICATE OF SERVICE
**************************
I certify that on _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by serving a true and correct copy at the addresses listed below:

_____                    _____
        (signature)                                          (date)

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

CORPORATE DISCLOSURE STATEMENT

TABLE OF CONTENTS.................................................................................i

TABLE OF CASES AND AUTHORITIES ............................................... iii

STATEMENT OF SUBJECT MATTER AND
APPELLATE OF JURISDICTION ..............................................................1

STATEMENT OF THE ISSUES..................................................................2

STATEMENT OF THE CASE......................................................................3

STATEMENT OF THE FACTS ...................................................................4

SUMMARY OF THE ARGUMENT ...........................................................7

ARGUMENT ...............................................................................................9

    STATEMENT OF THE STANDARD REVIEW ..........................9

    DISCUSSION................................................................................9

    A.    Oliver Pled a Valid Cause of Action for Fraudulent Conveyance ........9

        (1).    Equitable Distribution of Rights of Oliver Pursuant to Va. Code § 20-107
            ........................................................................................13

        (2).    The unilateral transfer of a beneficiary designation on a Life Insurance Policy which is marital property pursuant to Va. Code § 20-107.3, is an interest subject to the provisions of Va. Code § 55-80. ...............................................16

i

B.    Alternatively, the question of whether unilateral change of a beneficiary designation on a life insurance policy, made by a one spouse (Husband) without the knowledge or consent of the other spouse (Wife) which substitutes a third party for the other spouse (Wife) as beneficiary, at a time when the marriage is in jeopardy, and the life insurance policy is marital property pursuant to Va. Code §20-107.3, a conveyance, assignment or transfer that would hinder or defraud the other spouse (Wife) out of what they are or may be lawfully entitled to and which is voidable pursuant to Va. Code § 55-80 should be certified to the Virginia Supreme Court. .............................................................18

CONCLUSION ......................................................................................20

STATEMENT REGARDING ORAL ARGUMENT ............................................20

ADDENDUM

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# <u>TABLE OF CASES AND AUTHORITIES</u>

<u>**Page(s)**</u>

**FEDERAL CASES**

*Boyd v. Bulala*,
877 F.2d 1191 (4th Cir. 1989) .......................................................18

*Colgan Air, Inc. v. Raytheon Aircraft Co.*,
507 F.3d 270 (4th Cir. 2007) ...........................................................9

*PSI NET, Inc. v. Chapman*,
317 F.3d 413 (4th Cir. 2003), *affirmed*,
262 F.3d 227 (4th Cir. 2004) .........................................................18

*Republican Party v. Martin*,
980 F.2d 943 (4th Cir. 1992) ............................................................9

**VIRGINIA CASES**

*Barr v. Town & Country Properties*,
240 Va. 292, 396 S.E.2d 672 (1990) .............................................13

*Booth v. Booth*,
7 Va. App. 22, 371 S.E.2d 569 (Va. Ct. App. 1988)........................14, 15, 17

*Buchanan v. Buchanan*,
266 Va. 207, 585 S.E.2d 533 (2003) .......................................15, 17

*Chesterfield County v. Stigall*,
262 Va. 697, 554 S.E.2d 49 (2001) ...............................................13

*Coalter v. Willard*,
156 Va. 79, 158 S.E. 724 (1931) ............................................*passim*

*Crowder v. Crowder*,
125 Va. 80, 99 S.E. 746 (1919) ..............................................15, 17

*Driskell v. Driskill,*
    2003 VA Cir. LEXIS 380 (Norfolk Cir. 2003) ..................................... 15-16

*Lightburn v. Lightburn,*
    22 Va. App. 612, 472 S.E.2d 281 (Va. Ct. App. 1996)...............................14

*Loudoun County Department of Social Services v. Etzold,*
    245 Va. 80, 425 S.E.2d 800 (1993) ..............................................................13

*Price v. Price,*
    4 Va. App. 224, 355 S.E.2d 905 (1987) ................................................. 14-15

*Wagner v. Wagner,*
    4 Va. App. 397, 358 S.E.2d 407 (1987) ......................................................14

*Wyatt v. McDermott,*
    283 Va. 685 (2012) ......................................................................................18

**FEDERAL STATUES**

28 U.S.C. § 1291 .................................................................................................1

28 U.S.C. § 1332 .............................................................................................1, 9

**VIRGINIA STATUTES**

Va. Code § 20-103(A)(vii).................................................................................14

Va. Code § 20-107.3 ...............................................................................*passim*

Va. Code § 20-107.3(A)(2)(ii) ..........................................................................14

Va. Code § 55-80 ....................................................................................*passim*

**RULES**

Fed. R. Civ. P. 12(b)(6)...........................................................................1, 2, 3, 9

Va. Sup. Ct. R. 5:40 ..........................................................................................18

iv

**OTHER**

Black's Law Dictionary,
    809 (6th Edition 1991)...................................................................................11

## <u>STATEMENT OF SUBJECT MATTER AND<br>APPELLATE OF JURISDICTION</u>

The United States District Court for the Eastern District of Virginia ("District Court") had jurisdiction over this civil action based on diversity of citizenship between the parties pursuant to 28 U.S.C. § 1332. This court has jurisdiction pursuant to 28 U.S.C. § 1291 to hear this appeal from the District Court's final decision and order filed on October 2, 2013, granting the Appellees' Fed. R. Civ. P. 12(b)(6) Motion to Dismiss. On October 30, 2013, a notice of appeal was timely filed with the Clerk of the District Court. This appeal is from a final judgment that disposes of all parties' claims.

## STATEMENT OF THE ISSUES

I.    Did the District Court err in granting the Plaintiff's Fed. R. Civ. P. 12(b)(6) Motion to Dismiss Oliver's Counterclaim by erroneously holding that under Virginia law, the unilateral change of a beneficiary designation on a life insurance policy, made by a one spouse (Husband) without the knowledge or consent of the other spouse (Wife) which substitutes a third party for the other spouse (Wife) as beneficiary, at a time when the marriage is in jeopardy, and the life insurance policy is marital property pursuant to Va. Code § 20-107.3, is not a conveyance, assignment or transfer that would hinder or defraud the other spouse (Wife) out of what they are or may be lawfully entitled to and which is therefore not voidable pursuant to Va. Code § 55-80?

## <u>STATEMENT OF THE CASE</u>

This case for breach of an insurance contract was filed by Janine Perry Weber against the Lincoln National Life Insurance Company on January 18, 2013. On February 15, 2013, Lincoln filed an Answer, Motion to Join Party on Counter-Claim, and Counter-Claim for Interpleader. Subsequently, the Court entered an Order granting Lincoln's Motion for Joinder on March 4, 2013, adding Melissa Sue Dancer Oliver (hereinafter "Oliver") as a party to the proceedings. On April 12, 2013, Oliver filed an Answer to the Counter-Claim Interpleader and a Counter-Claim against Janine Perry Weber (hereinafter "Weber"). On May 3, 2013, Weber then filed her Motion to Dismiss Oliver's Counter-claim.

The Counter-Claim of Oliver sought an Order declaring that the unilateral change of the named beneficiary (from Oliver to Weber) in a life insurance policy by John Patton Oliver, Jr. (hereinafter "Decedent") immediately prior to him committing suicide amounted to a fraudulent conveyance pursuant to Va. Code §§ 55-80, and 20-107.3.

The Court granted Weber's Motion to Dismiss as to Oliver's fraudulent conveyance claim and her case was dismissed with prejudice pursuant to Fed. R. Civ. P. 12(B)(6) due to a failure to state a claim for which relief could be granted.

3

## STATEMENT OF THE FACTS

Decedent and Oliver were married in July, 1998. Joint Appendix (hereinafter "J.A.") page 84. On or about October 14, 2005, they met with their family financial advisor, Thomas Hill, CPA ("Hill"). J.A. page 84. The couple had recently purchased their home in Farmville, Virginia, and some land in Kentucky. J.A. page 84. As part of their family financial planning, the parties decided to purchase life insurance on each other. J.A. page 84. Hill, during a joint meeting with the couple, completed the application for the policy at issue in this case for Decedent. J.A. page 84. The application was submitted to Lincoln by Hill and life insurance policy #T201125038 was issued naming Decedent as insured and listing Oliver as the beneficiary. J.A. page 84. Since the issuance of the policy and until Decedent's death, all premiums for said policy were paid for with marital funds of Decedent and Oliver out of their joint bank account. J.A. page 84.

The couple began experiencing marital discord in the spring of 2012. J.A. page 84. They had discussed the possibility of separating and both acknowledged that the possibility of divorce was imminent. J.A. page 84. In the months leading up to Decedent's death he had multiple conversations with his mother, Janine Perry Weber ("Weber"), regarding the fact a separation and divorce was likely.

4

Decedent also informed Weber that he was changing the beneficiary designation on the Lincoln life insurance policy.  J.A. page 84.

On July 10, 2012, without any notice to Oliver, and without Oliver's knowledge or consent, decedent submitted a "life beneficiary name change form" to Lincoln National Insurance Company requesting that the beneficiary of the policy be changed to Weber.  J.A. page 84.  Weber gave no consideration for the transfer.  J.A. page 86.  On or about July 12, 2012, Decedent placed an order for a shotgun from an on-line gun shop, which he received on July 19, 2012.  J.A. page 85.  On July 20, 2012 Lincoln issued a letter to Decedent confirming receipt of his request to change the beneficiary of the policy to Weber.  J.A. page 55.  Decedent died from a self-inflicted gunshot would that same day, dying intestate. J.A. page 85.

During the weeks preceding Decedent's death Oliver had spent the workweeks in New York on business and had been shuttling back and forth to Farmville via train.  J.A. page 85.  At the time of Decedent's death the couple was still living in the marital residence in Farmville.  J.A. page 85.  Oliver did not have any knowledge of or consent to the transfer of the life insurance designation.  J.A. page 84. Weber, however, did have knowledge at the time of the transfer that Oliver had no knowledge of the transfers and that they were made in order to

divest Oliver of her interest in the proceeds and protection of the life insurance policy. J.A. page 84-85.

Following Decedent's death both Oliver and Weber made requests to Lincoln National Life Insurance Company ("Lincoln") for disbursement of the life insurance proceeds, totaling $500,000.00. J.A. page 79-81. Due to the conflicting claims and the potential for double liability, Lincoln refused to disburse the proceeds to either party, leading to the current proceeding. J.A. page 79-81.

## SUMMARY OF THE ARGUMENT

This is a case in which a husband who was having marital difficulties with his wife elected to substitute his Mother for his Wife as beneficiary on a life insurance policy that he and his wife purchased and that upon confirmation that the change had been completed, the husband committed suicide. The Wife filed a Counter-Claim seeking to have the beneficiary designation declared void. The district court felt obligated to dismiss the counter-claim because it did not have the authority to overrule a case it thought was determinative of the outcome of this case. The gist of Oliver's argument is that the case the district court found was determinative is readily distinguishable from the facts in this case and that its holding is not applicable here. The district judge was satisfied that an injustice had been done by virtue of Decedent's disposal of marital assets (J.A. 120 ln 15) but stated he could not find a way around *Coalter v. Willard*, 156 Va. 79, 158 S.E. 724 (1931).

If *Coalter* is distinguished, which Oliver submits is appropriate, and its holding determined not to be applicable here, it becomes clear that the benefits of an insurance policy that qualifies as a marital asset, because it was purchased during the marriage and paid for with marital funds, is properly within the scope of Va. Code § 55-80 and the unilateral conveyance of said benefits to a third party

without consideration and without the other spouse's knowledge or consent, at a time when the marriage is in jeopardy, is fraudulent and is voidable.

## ARGUMENT

## STATEMENT OF THE STANDARD FOR REVIEW

Jurisdiction in this matter is premised on diversity of citizenship between the parties. 28 U.S.C. § 1332. A federal court sitting in diversity applies the substantive law of the forum state. *Colgan Air, Inc. v. Raytheon Aircraft Co.,* 507 F.3d 270, 275 (4th Cir. 2007).

The purpose of a Fed. R. Civ. P. 12(b)(6) motion is to test the sufficiency of a complaint. "Importantly, a Fed. R. Civ. P. 12(b)(6) motion does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly a Fed. R. Civ. P. 12(b)(6) motion should only be granted if, after accepting all well pleaded allegations in the plaintiff's complaint as true and drawing all reasonable factual inferences from those facts in the plaintiff's favor, it appears certain that the plaintiff cannot prove any set of facts in support of his claim entitling him to relief. *Id.* An Appellate Court reviews a dismissal under Fed. R. Civ. P. 12(b)(6) *de novo*. *Id*.

## DISCUSSION

A.    Oliver Pled A Valid Cause of Action for Fraudulent Conveyance

Oliver's claims arise pursuant to §§ 55-80 and 20-107.3 of the Code of Virginia. These statutes are broadly worded, are comprehensive in nature, and

have been construed by Virginia Courts to provide the protection and relief Oliver seeks.

The trial court, in its opinion, found that Oliver pled sufficient facts to obtain relief for fraudulent conveyance until it got to the issue of whether the life insurance policy was property, pursuant to Va. Code § 55-80.

As plead in Oliver's Counter-Claim, during October, 2005, Oliver and Decedent purchased the subject life insurance policy in order to allow them to be able to pay their bills and protect their estate should something happen to either one of them.

Va. Code § 55-80 protects Oliver from being "hindered" or "defrauded" out of what she and Decedent worked for together as husband and wife, to wit; the protection provided by the life insurance policy.

When the Virginia Supreme Court decided *Coalter v. Willard*, 156 Va. 79, 158 S.E. 724 (1931), the parties in that suit were not a husband and wife. It was dealing with parties who dealt with each other at arm's length in a commercial transaction. The issue in the case did not involve marital property rights in any way.

The trial court correctly found that a life insurance policy may, pursuant to Va. Code § 20-107.3, be property.

Va. Code § 20-107.3 states in part: "…the court, upon request of either party, (i) shall determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties…"

Black's Law Dictionary defines intangible property as property that is a right, or one which is lacking physical existence, that has no intrinsic and marketable value. Black's Law Dictionary 809 (6th Edition 1991).

The trial judge found that as there was no cash value, the policy was not property and hence *Coalter* would apply and Oliver's pleading stated no claim. The judge overlooks the broad definition of property in Va. Code § 20-107.3 in which it includes intangibles.

Here, the subject of this suit, the insurance policy on Decedent's life, is intangible personal property as contemplated by Va. Code § 20-107.3. As such it was marital property over which Decedent had no right to unilaterally make a conveyance that would strip Oliver of all of the benefits of the policy.

In announcing its ruling, the trial court stated that it was constrained by *Coalter* from extending that holding here stating that *Coalter* did not make a distinction between marital property interests and property interest in general. Interestingly though, that issue was not before the court at the time it decided *Coalter*, hence it did not decide that issue at that time. Moreover, the trial court stated at oral argument on the motion to dismiss that it did not think it was in a

11

position to overrule *Coalter* but that "it thought Oliver's argument might find somebody who will feel it has a good basis." (J.A, 120, ln 10)

The trial court was well satisfied that Decedent was "getting rid of his assets." (J.A. 120, ln 15)

As plead in Oliver's Counter-Claim, all premiums for the life insurance policy were paid with marital funds.  Beginning in the Spring of 2012, and continuing until Decedent's death, Decedent and Oliver were experiencing marital discord, had discussed the possibility of separating, and had both acknowledged that divorce was imminent.  In the months leading up the Decedent's death, he had multiple conversations with Weber regarding the fact that a separation and divorce was likely. On July 10, 2012, without any notice to Oliver, and without Oliver's knowledge or consent, Decedent submitted a "Life Beneficiary Name Change form" to Lincoln National requesting that the beneficiary of the policy be changed to Weber.  By changing the beneficiary designation without Oliver's knowledge or consent, during a period in which the marriage was in jeopardy, Decedent defrauded Oliver out of what she was lawfully entitled, the benefits of the life insurance policy that was purchased with marital funds.

At the time the change of beneficiary designation form was made, no consideration changed hands between Weber and Decedent, Weber was aware that the marriage between Decedent and Oliver was in jeopardy, Weber was aware that

12

Oliver had no knowledge of the change of beneficiary on the life insurance policy, and Weber was aware that the change would divest Oliver of her interest in the proceeds of the life insurance policy. Therefore, the beneficiary designation change form was made with the intent to hinder, delay, and defraud Oliver of her interest in the life insurance policy, which interest was the protection provided by the policy and was something to which Oliver was lawfully entitled.

In Virginia, courts construe statutes for the sole purpose of giving effect to the expressed intentions of the legislature. *See Chesterfield County v. Stigall*, 262 Va. 697, 704, 554 S.E.2d 49 (2001). Consequently, the Court must assume "that the legislature chose, with care, the words it used in enacting the statute." *Barr v. Town & Country Properties*, 240 Va. 292, 295, 396 S.E.2d 672 (1990). To this end, we must turn to the language of the statute itself, and "if a statute is clear and unambiguous, a court will give the statute its plain meaning." *Loudoun County Department of Social Services v. Etzold*, 245 Va. 80, 84, 425 S.E.2d 800 (1993).

1.    Equitable Distribution Rights of Oliver Pursuant to VA Code § 20-107.3

Oliver had an interest in the proceeds of the insurance policy. The parties purchased the policy for the purpose of protecting their estate should something happen to either one of them. Decedent's transfer of the fruits of the policy to Weber, from Oliver, frustrates this purpose. Had Oliver been aware of Decedent's having made the beneficiary designation change, she could have sought relief from

13

the Court in the form of a pendent lite decree, pursuant to Va. Code § 20-103(A)(vii), requiring Decedent to reinstate her as beneficiary under the policy pending the outcome of the divorce.

Equitable distribution is the mechanism by which a court divides marital property between spouses upon divorce. Determining who has legal title, however, has little or no bearing upon how the value of an asset is to be equitably distributed by a monetary award under Va. Code § 20-107.3. The mandate in a property distribution under this section is to allocate to each party a fair portion of the marital wealth. *Lightburn v. Lightburn,* 22 Va. App. 612, 616, 472 S.E.2d 281, 283 (Va. Ct. App. 1996).

"Waste" may be generally characterized as the dissipation of marital funds in anticipation of divorce or separation for a purpose unrelated to the marriage and in derogation of the marital relationship at a time when the marriage is in jeopardy. *Booth v. Booth*, 7 Va. App. 22, 27-28, 371 S.E.2d 569, 572-573 (Va. Ct. App. 1988). The goal of equitable distribution is to adjust the property interests of the spouses fairly and equitably. To allow one spouse to squander or dispose of marital property is to make an equitable award impossible. Normally, only property owned by the parties at the time of the last separation is classified as marital property. Va. Code § 20-107.3(A)(2)(ii); *Wagner v. Wagner*, 4 Va. App. 397, 404, 358 S.E.2d 407, 410 (Va. Ct. App. 1987); *Price v. Price*, 4 Va. App. 224, 231, 355 S.E.2d 905,

14

909 (Va. Ct. App. 1987). In the case of assets wasted or dissipated in anticipation of separation or divorce, however, equity can only be accomplished if the party who last had the funds is held accountable for them. *Booth v. Booth*, 7 Va. App. 22, 27-28, 371 S.E.2d 569, 572-573 (Va. Ct. App. 1988).

In *Crowder v. Crowder*, 125 Va. 80, 99 S.E. 746 (1919), the Supreme Court of Virginia specifically held that a spouse fraudulently conveys marital property when the transfer is made at a time when the marriage is in "jeopardy." When so done, the transfer is subject to the provisions of Va. Code § 55-80 and the transfer is void. *Id.* Further, the Court went on to say that a spouse comes within the classification of "other persons," as mentioned in Va. Code § 55-80, who are protected against being defrauded by such a transfer, of "what they are or may be entitled to." It is not necessary that a spouse should be a creditor in a technical sense. *Id.*

In *Buchanan v. Buchanan*, 266 Va. 207, 585 S.E.2d 533 (2003), a much more recent case, the Virginia Supreme Court reaffirmed that a wife was an "other person" who may be entitled to payment pursuant to Va. Code § 55-80 and that the statute applies to both what one is entitled to (presently) and what one may be entitled to in the future.

Life insurance policies purchased during the marriage and paid for by marital assets are marital property. *See Driskell v. Driskill,* 2003 VA Cir. LEXIS

15

380 (Norfolk Cir. 2003)(By making premium payments during the marriage, the life insurance policies change from separate to marital property).

2. <u>The unilateral transfer of a beneficiary designation on a Life Insurance Policy which is marital property pursuant to VA Code § 20-107.3, is an interest subject to the provisions of Va. Code § 55-80</u>

The Court relied on the case of *Coalter v. Willard*, 156 Va. 79, 158 S.E. 724 (1931) for its holding that although the subject life insurance policy was marital property pursuant to Va. Code § 20-107.3 it is not property under Va. Code § 55-80. In *Coalter* the court held that a business creditor could not assert a claim against the decedent's estate for his changing of the beneficiary in his life insurance policy to his wife prior to his death.

A careful reading of this case makes it clear that *Coalter* is distinguishable from the case at bar. *Coalter* dealt with a creditor pursuing a contract claim against a decedent's survivors. There, the Court held that a *Fieri Facias* could not reach the proceeds of a life insurance policy. *Coalter* was not even a fraudulent conveyance case.

The Virginia Supreme Court has not rendered an opinion as to whether a life insurance policy which is marital property pursuant to Va. Code § 20-107.3 is property under Va. Code § 55-80. If the protection and benefits of a life insurance policy, which is marital property, is a right or interest to which a spouse is or may be entitled, then pursuant to Va. Code § 55-80, Oliver has pled a valid cause of

16

action for a suit to set aside the change of designation during a period of time when the marriage was in "jeopardy" as a fraudulent conveyance.

In the case at bar, Oliver's claims are based on that portion of Va. Code § 20-107.3 that gives a spouse a marital interest in all property, tangible and intangible, acquired during the marriage. The subject life insurance policy was obtained by Decedent and Oliver during the marriage for purposes of their joint financial planning. The premiums were entirely paid with marital funds. As a result, the subject life insurance policy is a marital asset. Decedent's illicit change of beneficiary designation on the subject life insurance policy when the marriage was in "jeopardy" is void.

Oliver's interest in the benefits of the life insurance policy is vastly different than that of a mere creditor who claimed a contractual debt, as was the case in *Coalter*. Once the marriage was in "jeopardy," Decedent lost all right to unilaterally convey away the benefits of the subject life insurance policy by changing the beneficiary designation. A spouse is entitled to pursue an action under VA Code § 55-80 for both what one is entitled to, and what one may be entitled to. *Buchanan v. Buchanan*, 266 Va. 207, 585 S.E.2d 533 (2003). Accordingly, *Coalter* is distinguishable and the trial court's reliance on it is misplaced. Following *Buchanan, Crowder, Booth,* and the plain language of §§ 55-80 and 20-107.3 of the Code of Virginia, the Decedent's beneficiary

17

designation change is void and Oliver is the rightful and lawful beneficiary of the subject life insurance policy. Therefore, the trial court's ruling granting Weber's motion to dismiss should be reversed.

> B. <u>Alternatively, the question of whether unilateral change of a beneficiary designation on a life insurance policy, made by a one spouse (Husband) without the knowledge or consent of the other spouse (Wife) which substitutes a third party for the other spouse (Wife) as beneficiary, at a time when the marriage is in jeopardy, and the life insurance policy is marital property pursuant to Va. Code § 20-107.3, is a conveyance, assignment or transfer that would hinder or defraud the other spouse (Wife) out of what they are or may be lawfully entitled to and which is voidable pursuant to Va. Code § 55-80 should be certified to the Virginia Supreme Court.</u>

Rule 5:40 of the Rules of the Supreme Court of Virginia provides the Court with the discretion to answer questions in Virginia law certified to it by this Court, provided that those questions are determinative in these proceedings and there appear to be no controlling Virginia precedents on point. *See Wyatt v. McDermott* 283 Va. 685 (2012); *PSI NET, Inc. v. Chapman*, 317 F.3d. 413, 415 (4th Cir. 2003), affirmed, 262 F.3d. 227 (4th Cir. 2004); *Boyd v. Bulala*, 877 F.2d. 1191, 1199 (4th Cir. 1989). Here, the question of whether a life insurance policy, which is marital property pursuant to Va. Code § 20-107.3, is property or an interest in property subject to the fraudulent conveyance statute of Va. Code § 55-80, presents a question of first impression that warrants consideration by the Virginia Supreme Court as the response will be determinative in this case. The certified question would be:

Under Virginia law, is the unilateral change of a beneficiary designation on a life insurance policy, made by a one spouse (Husband) without the knowledge or consent of the other spouse (Wife) which substitutes a third party for the other spouse (Wife) as beneficiary, at a time when the marriage is in jeopardy, and the life insurance policy is marital property pursuant to Va. Code § 20-107.3, a conveyance, assignment or transfer that would hinder or defraud the other spouse (Wife) out of what they are or may be lawfully entitled to and which is voidable pursuant to Va. Code § 55-80?

As discussed above, no Virginia case has addressed the proposed question.

In addition, the answer to the proposed question is clearly determinative in this case and the district court held as much in its ruling and in a most compelling manner invited review (J.A. 120 ln 10) so that the question might be properly considered in a forum possessed of the power of determination.

## CONCLUSION

For the reasons stated above, the District Court judgment granting Weber's Motion to Dismiss should be reversed or in the alternative certify the proposed question herein for determination by the Virginia Supreme Court.

## STATEMENT REGARDING ORAL ARGUMENT

Counsel for Oliver, respectfully request to have an opportunity to present oral argument and believes it will assist in resolution of the issues presented.

Respectfully submitted,

**MELISSA SUE DANCY OLIVER**

By:   /s/  Jonathan L. Stone
                Of Counsel

Jonathan L. Stone, Esquire (VSB # 75483)
Norris & St. Clair, P.C.
2840 S. Lynnhaven Road
Virginia Beach, VA 23452
Telephone:  (757) 498-7700
Facsimile:  (757) 498-7744

and

Steven G. Owen, Esquire
Courthouse Law Group
2521 North Landing Rd., Suite 200
Virginia Beach, VA 23456
Telephone: (757) 427-3348
Facsimile: (757) 430-2531

*Co-Counsel for the Appellant*

## **ADDENDUM**

**Page**

Va. Code § 20-107.3 ........................................................................Add. 1

Va. Code § 55-80 ............................................................................Add. 7

*Va. Code Ann. § 20-107.3*

CODE OF VIRGINIA
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

\*\*\* Current through the 2013 Regular Session, and 2013 Special Session I. \*\*\*
\*\*\* Annotations Current For Cases Received by October 25, 2013. \*\*\*

TITLE 20.  DOMESTIC RELATIONS
CHAPTER 6.  DIVORCE, AFFIRMATION AND ANNULMENT

**GO TO CODE OF VIRGINIA ARCHIVE DIRECTORY**

Va. Code Ann. § 20-107.3  (2014)

§ 20-107.3.  Court may decree as to property and debts of the parties

   A. Upon decreeing the dissolution of a marriage, and also upon decreeing a divorce from the bond of matrimony, or upon the filing with the court as provided in subsection J of a certified copy of a final divorce decree obtained without the Commonwealth, the court, upon request of either party, (i) shall determine the legal title as between the parties, and the ownership and value of all property, real or personal, tangible or intangible, of the parties and shall consider which of such property is separate property, which is marital property, and which is part separate and part marital property in accordance with subdivision A 3 and (ii) shall determine the nature of all debts of the parties, or either of them, and shall consider which of such debts is separate debt and which is marital debt. The court shall determine the value of any such property as of the date of the evidentiary hearing on the evaluation issue. The court shall determine the amount of any such debt as of the date of the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, and the extent to which such debt has increased or decreased from the date of separation until the date of the evidentiary hearing. Upon motion of either party made no less than 21 days before the evidentiary hearing the court may, for good cause shown, in order to attain the ends of justice, order that a different valuation date be used. The court, on the motion of either party, may retain jurisdiction in the final decree of divorce to adjudicate the remedy provided by this section when the court determines that such action is clearly necessary, and all decrees heretofore entered retaining such jurisdiction are validated.

   1. Separate property is (i) all property, real and personal, acquired by either party before the marriage; (ii) all property acquired during the marriage by bequest, devise, descent, survivorship or gift from a source other than the other party; (iii) all property acquired during the marriage in exchange for or from the proceeds of sale of separate property, provided that such property acquired during the marriage is maintained as separate property; and (iv) that part of any property classified as separate pursuant to subdivision A 3. Income received from separate property during the marriage is separate property if not attributable to the personal effort of either party. The increase in value of separate property during the marriage is separate property, unless marital property or the personal efforts of either party have contributed to such increases and then only to the extent of the increases in value attributable to such contributions. The personal efforts of either party must be significant and result in substantial appreciation of the separate property if any increase in value attributable thereto is to be considered marital property.

   2. Marital property is (i) all property titled in the names of both parties, whether as joint

**Add. 1**

tenants, tenants by the entirety or otherwise, except as provided by subdivision A 3, (ii) that part of any property classified as marital pursuant to subdivision A 3, or (iii) all other property acquired by each party during the marriage which is not separate property as defined above. All property including that portion of pensions, profit-sharing or deferred compensation or retirement plans of whatever nature, acquired by either spouse during the marriage, and before the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, is presumed to be marital property in the absence of satisfactory evidence that it is separate property. For purposes of this section marital property is presumed to be jointly owned unless there is a deed, title or other clear indicia that it is not jointly owned.

3. The court shall classify property as part marital property and part separate property as follows:

a. In the case of income received from separate property during the marriage, such income shall be marital property only to the extent it is attributable to the personal efforts of either party. In the case of the increase in value of separate property during the marriage, such increase in value shall be marital property only to the extent that marital property or the personal efforts of either party have contributed to such increases, provided that any such personal efforts must be significant and result in substantial appreciation of the separate property.

For purposes of this subdivision, the nonowning spouse shall bear the burden of proving that (i) contributions of marital property or personal effort were made and (ii) the separate property increased in value. Once this burden of proof is met, the owning spouse shall bear the burden of proving that the increase in value or some portion thereof was not caused by contributions of marital property or personal effort.

"Personal effort" of a party shall be deemed to be labor, effort, inventiveness, physical or intellectual skill, creativity, or managerial, promotional or marketing activity applied directly to the separate property of either party.

b. In the case of any pension, profit-sharing, or deferred compensation plan or retirement benefit, the marital share as defined in subsection G shall be marital property.

c. In the case of any personal injury or workers' compensation recovery of either party, the marital share as defined in subsection H shall be marital property.

d. When marital property and separate property are commingled by contributing one category of property to another, resulting in the loss of identity of the contributed property, the classification of the contributed property shall be transmuted to the category of property receiving the contribution. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, such contributed property shall retain its original classification.

e. When marital property and separate property are commingled into newly acquired property resulting in the loss of identity of the contributing properties, the commingled property shall be deemed transmuted to marital property. However, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, the contributed property shall retain its original classification.

f. When separate property is retitled in the joint names of the parties, the retitled property shall be deemed transmuted to marital property. However, to the extent the property is retraceable by a preponderance of the evidence and was not a gift, the retitled property shall retain its original classification.

g. When the separate property of one party is commingled into the separate property of the

**Add. 2**

other party, or the separate property of each party is commingled into newly acquired property, to the extent the contributed property is retraceable by a preponderance of the evidence and was not a gift, each party shall be reimbursed the value of the contributed property in any award made pursuant to this section.

h. Subdivisions A 3 d, e and f shall apply to jointly owned property. No presumption of gift shall arise under this section where (i) separate property is commingled with jointly owned property; (ii) newly acquired property is conveyed into joint ownership; or (iii) existing property is conveyed or retitled into joint ownership. For purposes of this subdivision A 3, property is jointly owned when it is titled in the name of both parties, whether as joint tenants, tenants by the entireties, or otherwise.

4. Separate debt is (i) all debt incurred by either party before the marriage, (ii) all debt incurred by either party after the date of the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, and (iii) that part of any debt classified as separate pursuant to subdivision A 5. However, to the extent that a party can show by a preponderance of the evidence that the debt was incurred for the benefit of the marriage or family, the court may designate the debt as marital.

5. Marital debt is (i) all debt incurred in the joint names of the parties before the date of the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent, whether incurred before or after the date of the marriage, and (ii) all debt incurred in either party's name after the date of the marriage and before the date of the last separation of the parties, if at such time or thereafter at least one of the parties intends that the separation be permanent. However, to the extent that a party can show by a preponderance of the evidence that the debt, or a portion thereof, was incurred, or the proceeds secured by incurring the debt were used, in whole or in part, for a nonmarital purpose, the court may designate the entire debt as separate or a portion of the debt as marital and a portion of the debt as separate.

B. For the purposes of this section only, both parties shall be deemed to have rights and interests in the marital property. However, such interests and rights shall not attach to the legal title of such property and are only to be used as a consideration in determining a monetary award, if any, as provided in this section.

C. Except as provided in subsection G, the court shall have no authority to order the division or transfer of separate property or marital property, or separate or marital debt, which is not jointly owned or owed. The court may, based upon the factors listed in subsection E, divide or transfer or order the division or transfer, or both, of jointly owned marital property, jointly owed marital debt, or any part thereof. The court shall also have the authority to apportion and order the payment of the debts of the parties, or either of them, that are incurred prior to the dissolution of the marriage, based upon the factors listed in subsection E.

As a means of dividing or transferring the jointly owned marital property, the court may transfer or order the transfer of real or personal property or any interest therein to one of the parties, permit either party to purchase the interest of the other and direct the allocation of the proceeds, provided the party purchasing the interest of the other agrees to assume any indebtedness secured by the property, or order its sale by private sale by the parties, through such agent as the court shall direct, or by public sale as the court shall direct without the necessity for partition. All decrees entered prior to July 1, 1991, which are final and not subject to further proceedings on appeal as of that date, which divide or transfer or order the division or transfer of property directly between the parties are hereby validated and deemed self-executing. All orders or decrees which divide or transfer or order division or transfer of real property between the parties shall be recorded and indexed in the names of the parties in the appropriate grantor and grantee indexes in the land records in the clerk's office of the circuit court of the county or city in which the property is located.

## Add. 3

D. In addition, based upon (i) the equities and the rights and interests of each party in the marital property, and (ii) the factors listed in subsection E, the court has the power to grant a monetary award, payable either in a lump sum or over a period of time in fixed amounts, to either party. The party against whom a monetary award is made may satisfy the award, in whole or in part, by conveyance of property, subject to the approval of the court. An award entered pursuant to this subsection shall constitute a judgment within the meaning of § 8.01-426 and shall not be docketed by the clerk unless the decree so directs. An award entered pursuant to this subsection may be enforceable in the same manner as any other money judgment. The provisions of § 8.01-382, relating to interest on judgments, shall apply unless the court orders otherwise.

Any marital property, which has been considered or ordered transferred in granting the monetary award under this section, shall not thereafter be the subject of a suit between the same parties to transfer title or possession of such property.

E. The amount of any division or transfer of jointly owned marital property, and the amount of any monetary award, the apportionment of marital debts, and the method of payment shall be determined by the court after consideration of the following factors:

1. The contributions, monetary and nonmonetary, of each party to the well-being of the family;

2. The contributions, monetary and nonmonetary, of each party in the acquisition and care and maintenance of such marital property of the parties;

3. The duration of the marriage;

4. The ages and physical and mental condition of the parties;

5. The circumstances and factors which contributed to the dissolution of the marriage, specifically including any ground for divorce under the provisions of subdivisions (1), (3) or (6) of § 20-91 or § 20-95;

6. How and when specific items of such marital property were acquired;

7. The debts and liabilities of each spouse, the basis for such debts and liabilities, and the property which may serve as security for such debts and liabilities;

8. The liquid or nonliquid character of all marital property;

9. The tax consequences to each party;

10. The use or expenditure of marital property by either of the parties for a nonmarital separate purpose or the dissipation of such funds, when such was done in anticipation of divorce or separation or after the last separation of the parties; and

11. Such other factors as the court deems necessary or appropriate to consider in order to arrive at a fair and equitable monetary award.

F. The court shall determine the amount of any such monetary award without regard to maintenance and support awarded for either party or support for the minor children of both parties and shall, after or at the time of such determination and upon motion of either party, consider whether an order for support and maintenance of a spouse or children shall be entered or, if previously entered, whether such order shall be modified or vacated.

G. In addition to the monetary award made pursuant to subsection D, and upon consideration of the factors set forth in subsection E:

**Add. 4**

1. The court may direct payment of a percentage of the marital share of any pension, profit-sharing or deferred compensation plan or retirement benefits, whether vested or nonvested, which constitutes marital property and whether payable in a lump sum or over a period of time. The court may order direct payment of such percentage of the marital share by direct assignment to a party from the employer trustee, plan administrator or other holder of the benefits. However, the court shall only direct that payment be made as such benefits are payable. No such payment shall exceed 50 percent of the marital share of the cash benefits actually received by the party against whom such award is made. "Marital share" means that portion of the total interest, the right to which was earned during the marriage and before the last separation of the parties, if at such time or thereafter at least one of the parties intended that the separation be permanent.

2. To the extent permitted by federal or other applicable law, the court may order a party to designate a spouse or former spouse as irrevocable beneficiary during the lifetime of the beneficiary of all or a portion of any survivor benefit or annuity plan of whatsoever nature, but not to include a life insurance policy. The court, in its discretion, shall determine as between the parties, who shall bear the costs of maintaining such plan.

H. In addition to the monetary award made pursuant to subsection D, and upon consideration of the factors set forth in subsection E, the court may direct payment of a percentage of the marital share of any personal injury or workers' compensation recovery of either party, whether such recovery is payable in a lump sum or over a period of time. However, the court shall only direct that payment be made as such recovery is payable, whether by settlement, jury award, court award, or otherwise. "Marital share" means that part of the total personal injury or workers' compensation recovery attributable to lost wages or medical expenses to the extent not covered by health insurance accruing during the marriage and before the last separation of the parties, if at such time or thereafter at least one of the parties intended that the separation be permanent.

I. Nothing in this section shall be construed to prevent the affirmation, ratification and incorporation in a decree of an agreement between the parties pursuant to §§ 20-109 and 20-109.1. Agreements, otherwise valid as contracts, entered into between spouses prior to the marriage shall be recognized and enforceable.

J. A court of proper jurisdiction under § 20-96 may exercise the powers conferred by this section after a court of a foreign jurisdiction has decreed a dissolution of a marriage or a divorce from the bond of matrimony, if (i) one of the parties was domiciled in this Commonwealth when the foreign proceedings were commenced, (ii) the foreign court did not have personal jurisdiction over the party domiciled in the Commonwealth, (iii) the proceeding is initiated within two years of receipt of notice of the foreign decree by the party domiciled in the Commonwealth, and (iv) the court obtains personal jurisdiction over the parties pursuant to subdivision A 9 of § 8.01-328.1, or in any other manner permitted by law.

K. The court shall have the continuing authority and jurisdiction to make any additional orders necessary to effectuate and enforce any order entered pursuant to this section, including the authority to:

1. Order a date certain for transfer or division of any jointly owned property under subsection C or payment of any monetary award under subsection D;

2. Punish as contempt of court any willful failure of a party to comply with the provisions of any order made by the court under this section;

3. Appoint a special commissioner to transfer any property under subsection C where a party refuses to comply with the order of the court to transfer such property; and

## Add. 5

4. Modify any order entered in a case filed on or after July 1, 1982, intended to affect or divide any pension, profit-sharing or deferred compensation plan or retirement benefits pursuant to the United States Internal Revenue Code or other applicable federal laws, only for the purpose of establishing or maintaining the order as a qualified domestic relations order or to revise or conform its terms so as to effectuate the expressed intent of the order.

L. If it appears upon or after the entry of a final decree of divorce from the bond of matrimony that neither party resides in the city or county of the circuit court that entered the decree, the court may, on the motion of any party or on its own motion, transfer to the circuit court for the city or county where either party resides the authority to make additional orders pursuant to subsection K or to carry out or enforce any stipulation, contract, or agreement between the parties that has been affirmed, ratified, and incorporated by reference pursuant to § 20-109.1.

Source: **Virginia > Find Statutes, Regulations, Administrative Materials & Court Rules > VA – Code of Virginia (Annotated)** 🔳
Terms: **20-107** (Suggest Terms for My Search)
View: Custom
Segments: Cite, Heading, Section, State, Text
Date/Time: Friday, February 7, 2014 - 4:48 PM EST

**LexisNexis®** About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2014 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**Add. 6**

*Va. Code Ann. § 55-80*

CODE OF VIRGINIA
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved

\*\*\* Current through the 2013 Regular Session, and 2013 Special Session I. \*\*\*
\*\*\* Annotations Current For Cases Received by October 25, 2013. \*\*\*

TITLE 55.  PROPERTY AND CONVEYANCES
CHAPTER 5.  FRAUDULENT AND VOLUNTARY CONVEYANCES, BULK AND CONDITIONAL SALES,
ETC.; WRITINGS NECESSARY TO BE RECORDED

## GO TO CODE OF VIRGINIA ARCHIVE DIRECTORY

Va. Code Ann. § **55-80** (2014)

§ **55-80.** Void fraudulent acts; bona fide purchasers not affected

Every gift, conveyance, assignment or transfer of, or charge upon, any estate, real or
personal, every suit commenced or decree, judgment or execution suffered or obtained and
every bond or other writing given with intent to delay, hinder or defraud creditors, purchasers
or other persons of or from what they are or may be lawfully entitled to shall, as to such
creditors, purchasers or other persons, their representatives or assigns, be void. This section
shall not affect the title of a purchaser for valuable consideration, unless it appear that he had
notice of the fraudulent intent of his immediate grantor or of the fraud rendering void the title
of such grantor.

Source: **Virginia > Find Statutes, Regulations, Administrative Materials & Court Rules > VA -
Code of Virginia (Annotated)** 
Terms: **55-80** (Suggest Terms for My Search)
View: Custom
Segments: Cite, Heading, Section, State, Text
Date/Time: Friday, February 7, 2014 - 4:50 PM EST

**LexisNexis**®  About LexisNexis | Privacy Policy | Terms & Conditions | Contact Us
Copyright © 2014 LexisNexis, a division of Reed Elsevier Inc. All rights reserved.

**Add. 7**

## <u>CERTIFICATE OF COMPLIANCE WITH RULE 32(a)</u>
**Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements**

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

> this brief contains <u>3,947</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

> this brief has been prepared in a proportional spaced typeface using <u>Microsoft Word</u> in <u>14 point Times New Roman</u>.

<u>/s/ Jonathan L. Stone</u>
Jonathan L. Stone

Dated: February 10, 2014

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that on February 10, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered CM/ECF users:

Samuel W. Meekins, Jr.
Cartwright R. Reilly
WOLCOTT RIVERS & GATES
Convergence Center IV
301 Bendix Road
Suite 500
Virginia Beach, VA 23452

*Counsel for Appellee*

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Adrienne R. Acra-Passehl
Adrienne R. Acra-Passehl
GIBSON MOORE APPELLATE SERVICES, LLC
421 East Franklin Street
Suite 230
Richmond, VA  23219